CONARD et al. v. SOUTHERN TIER MASONIC RELIEF ASS'N.

(Supreme Court, Appellate Division, Third Department.  January 4, 1905.)

1. BENEFICIAL ASSOCIATIONS—CERTIFICATES—DEATH CLAIMS—STATEMENT AS
   TO PAYMENT—NONCOMPLIANCE WITH LAW—RIGHTS OF BENEFICIARIES—AC-
   TIONS.
      Noncompliance by a beneficial association with Laws 1892, p. 2014, c.
   690, § 210, requiring each notice of assessment or call made by any asso-
   ciation transacting life insurance business on the co-operative or assess-
   ment plan to truly state the purpose of the same, and if the amount paid
   on the last death claim has not been paid in full, at its maximum face
   value, the name of the deceased member, and the maximum face value
   of the certificate or policy, and the reason why not paid in full, by reason
   of which the member remained in ignorance of the fact that the associa-
   tion was not paying death claims in full, and was induced to believe that
   his certificate was worth its maximum face value, gives no right of ac-
   tion after his death to the beneficiaries named in the certificate.

2. SAME—FALSE REPRESENTATIONS AS TO FINANCIAL CONDITION—CIRCULARS.
      The beneficiaries have no right of action against the association by
   reason of its falsely representing that it was in a flourishing financial
   condition, thereby inducing the member to believe that it was able to pay
   all claims in full, under which belief he paid all assessments made up to
   the time of his death.

3. SAME—MISJOINDER OF CAUSES OF ACTION—DEMURRER.
      A complaint in an action on the certificate by the beneficiaries to re-
   cover the amount due under the same and defendant's by-laws, and also
   claiming damages by reason of alleged noncompliance with the law and
   fraudulent representations, is demurrable for misjoinder of causes of ac-
   tion.

4. SAME—ACTION ON CONTRACT—ACTION IN TORT.
      The complaint was also demurrable as joining an action on contract and
   causes of action in tort and for wrongful illegal acts.

5. SAME—PARTIES PLAINTIFF—MISJOINDER.
      A certificate issued by a beneficial association for $3,000 was payable
   to the member's wife or children to the extent of $2,000, and as to the
   remaining $1,000, to his eldest child.  Held, that the wife and eldest
   child were improperly joined as parties plaintiff in an action on the cer-
   tificate, as it did not create a joint demand in their favor.
      Houghton, J., dissenting.

Appeal from Special Term, Chemung County.

Action by George P. Conard and another against the Southern
Tier Masonic Relief Association.  From an interlocutory judg-
ment for defendant, plaintiffs appeal.  Affirmed, and leave granted
to sever action on payment of costs.

The following is the complaint:

The plaintiffs herein, by Allen & Sabine, Esqs., their attorneys herein, com-
plaining of the defendant herein, allege on information and belief as follows:

### For a First Cause of Action.

First. The defendant the Southern Tier Masonic Relief Association is,
and at all times hereinafter mentioned was, a domestic corporation organized
under chapter 319 of the Laws of 1848, and the laws amendatory thereof
and supplementary thereto, and is, and at all times hereinafter mentioned
was, engaged in the city of Elmira, state of New York, in the business of
life insurance upon the co-operative or assessment (nonfraternal) plan, and
is, and at all times hereinafter mentioned was, a going concern.

Second. That prior to the 7th day of April, 1884, defendant issued to one William Conard a certificate of membership in a class of members of said defendant known as "First Class," which certificate was in the maximum sum of two thousand dollars ($2,000); and further that prior to said day defendant likewise issued to said William Conard a certificate of membership in a class of said defendant known as "Second Class," which certificate was in the maximum sum of one thousand dollars ($1,000), and that at all times after the issuance on or about the 7th day of April, 1884, of the Class A certificate hereinafter mentioned, said William Conard in all things complied with all the laws, rules, and regulations governing defendant, and remained a member in good standing in defendant association, and in each of said classes, and entitled to all its and their rights, privileges, and benefits.

Third. That on or about the 7th day of April, 1884, for the purpose of securing the payment to these plaintiffs of the sum of three thousand dollars ($3,000) upon his death, said William Conard surrendered to defendant the certificates in the first and second classes aforesaid, and received from defendant in exchange therefor, for the benefit of these plaintiffs, a certificate in a class called "Class A" by defendant, issued to him for the benefit of these plaintiffs, in words and manner following:

"Southern Tier Masonic Relief Association.

"Elmira                                                   New York
"No. 332                                        Amount $3000.

"This is to certify that Brother William Conard, of Burlington, New Jersey, is a member of the Southern Tier Masonic Relief Association of the State of New York, and is entitled to all its rights, privileges and benefits and subject to the laws, rules and regulations governing said Association.

"In favor of Julia A. Conard (wife) or children, $2000., George Powell Conard (eldest child) $1000.

"In Testimony Whereof the President and Secretary have hereunto set their hands and affixed the seal of the Association at Elmira, N. Y., this 7th day of April, A. D. 1884.

"H. B. Berry,                                    C. N. Shipman,
"Secretary.                                      President.

"[Seal.]"

"Class A."

Fourth. That these plaintiffs are the persons in said certificate named after the words "in favor of," and are respectively the son and wife of said William Conard. That the motive and purpose of taking out said certificate was that said William Conard desired to provide financial assistance for his said wife upon the occasion of his death, and further to secure to plaintiff George P. Conard the repayment of considerable sums of money loaned by said George P. Conard to said William Conard for the necessary support and maintenance of said William Conard and said Julia A. Conard, and thereafter promised to be loaned and actually loaned by plaintiff George P. Conard, which sums so loaned amount to much more than three thousand dollars. That for many years plaintiff George P. Conard has advanced to said William Conard all the moneys paid by him to defendant for premiums as herein set forth.

Fifth. That at all times after the issuance of the said certificate in paragraph third, hereinabove set forth, until and including the 23d day of November, 1903, the date of his death, said William Conard in all things complied, for the benefit of these plaintiffs, with all the laws, rules, and regulations governing defendant, Southern Tier Masonic Relief Association, and remained a member of good standing in said association, and entitled to all its rights, privileges, and benefits.

Sixth. That one of the rights, privileges, and benefits promised by defendant to said William Conard for the benefit of these plaintiffs was that defendant would, upon the death of said William Conard, in good standing in defendant association, pay to these plaintiffs, designated in said certificate as beneficiaries, the sum of money therein mentioned, to wit, the sum of three thousand dollars ($3,000), provided there should at the time of said

death be in the treasury of defendant sufficient moneys applicable to pay the said sum in full under by-laws which should or might be in force at the time of such death, and that, if sufficient moneys should not be so applicable under such by-laws, that then said company would pay to these plaintiffs such proportion of said sum named as might be applicable under such by-laws so to be in force at the time of such death.

Seventh. That on the 23d day of November, 1903, the following were the by-laws of defendant then in force with reference to the sums of money payable to the persons named as beneficiaries in such certificates, and with reference to the sums of money payable to these plaintiffs, to wit:

## "Article IV. Death Claims.

"Sec. 35. Upon the death of any member of this association the sum to be paid to his representatives 'as designated upon the books of this association, shall be as follows: At the expiration of each two months all moneys received from members for fees and assessments during that time (after deducting the necessary running expenses of the association) shall be divided pro rata per thousand dollars of insurance held among the beneficiaries of those who have died during that period, which sum so divided shall constitute the entire amount due upon any certificate thus terminated by the death of such member. Provided: That no beneficiary shall receive a larger amount than is named in the certificate for which he or she is entitled to receive pay. The board of directors may order the payment of one or more death claims from the surplus fund, whenever in their judgment said fund will warrant it."

And that said by-laws were duly enacted in or about the month of January, 1892.

Eighth. That on the 23d day of November, 1903, said William Conard departed this life, a member of defendant association, and in all things in good standing therein, and that thereafter proofs of his death were duly presented to defendant, in all things as required by the by-laws thereof, and by defendant duly accepted.

Ninth. That the amount of moneys received by defendant from members for fees and assessments during the two months including the 23d day of November, 1903, is four thousand seven hundred and seventy-eight $^{53}/_{100}$ dollars ($4,778.53); that the amount of necessary running expenses of the association during said period was one thousand six hundred and two $^{68}/_{100}$ dollars ($1,602.68); that the amount of insurance held by members of the defendant dying during said period was eleven thousand dollars ($11,000).

Tenth. That the amount due plaintiffs from defendant on their said certificate under said by-laws is the sum of eight hundred and sixty-six $^{13}/_{100}$ dollars ($866.13).

Eleventh. That due demand has been made by plaintiffs upon defendant for the payment of the sum of eight hundred and sixty-six $^{13}/_{100}$ dollars ($866.13), and that the same has been refused.

Twelfth. That defendant has paid these plaintiffs no sum whatever on account of said certificate or otherwise.

### For a Second Cause of Action.

For a second cause of action, plaintiffs, further complaining of the defendant, repeating each and every the allegations hereinbefore contained, and making the same part of this second cause of action, further allege, on information and belief, as follows:

Thirteenth. That in the year 1892, for the express protection of holders of certificates in corporations engaged in the business of life insurance upon the co-operative or assessment (nonfraternal) plan, and of the beneficiaries named in such certificates, and in order that the holders of such certificates for the benefit of the beneficiaries therein named, might know whether their certificates would be worth their maximum face value to their beneficiaries on their death, and, further, whether such corporations were paying their certificates in full at their maximum face value or not, the Legislature of the state of New York, with the approval of the Governor of the state of New York, in chapter 690 of the laws of said year, at section 210, referring to

such corporations, duly enacted (providing that the same should take effect on the first day of October, 1892), as follows, to wit: "Each notice of assessment, premium or periodical call made by any such corporation, association or society upon its members or any of them, shall truly state the cause and purpose of the same, and if the amount paid on the last death claim has not been paid in full at its maximum face value, the name of the deceased member, and the maximum face value of the certificate or policy and the reason why not paid in full."

Fourteenth. That the defendant thereupon impliedly agreed with said William Conard, for the benefit of these plaintiffs, that defendant would duly observe the provisions of said statute.

Fifteenth. That since the 1st day of October, 1892, a large number of members of this defendant, holding certificates thereof issued prior to the 1st day of October, 1892, died in good standing in said company, and that defendant has paid a large number of mortuary claims to the beneficiaries named in said certificates, but that in no such case has defendant at any time from the 1st day of January, 1890, to the present time, paid, or under its by-laws been able to pay, any of said death claims in full at the maximum face value of the certificates on which the same accrued, but, on the contrary, has compromised each and every of said claims at figures far below the maximum face value of the certificates on which said claims accrued, and all that defendant is able to pay plaintiffs on their said certificate is, under the said by-laws, the sum of eight hundred sixty-six and $13/100$ dollars ($866.13).

Sixteenth. That since the 1st day of October, 1892, defendant has each and every month issued to its members, including said William Conard, monthly notices of assessment and periodical calls, in each and every one of which defendant has failed to state in said notices the fact that it had not paid death claims accruing immediately prior thereto in full at their maximum face value, although such was continually the case.

Seventeenth. That, as a consequence of the failure of defendant to keep its said agreement, said William Conard, during all of his life, remained in ignorance of the fact that defendant was not paying in full at their maximum face value death claims accruing on the certificates issued by defendant to its members, and of the fact that certificates issued by defendant, including his own, were not worth their maximum face value, and believed that said company was able to and actually in the habit of paying its death claims in full at their maximum face values, and that certificates issued by defendant, including his own, were worth their maximum face value.

Eighteenth. That the amount of the moneys so paid by said William Conard for the benefit of these plaintiffs to defendant for assessments or periodical calls since the 1st day of October, 1892, is one thousand and thirty $20/100$ dollars ($1,030.20), paid in monthly payments of seven $20/100$ dollars ($7.20) per month, except in occasional instances where the same were doubled, and that the total amount paid by said William Conard to defendant for like benefit from April 7, 1884, to November 23, 1904, is one thousand nine hundred and forty $46/100$ dollars ($1.940.46).

Nineteenth. That by reason of the failure of defendant to perform its said agreement made with said William Conard for the benefit of these plaintiffs, and of the failure of defendant to observe the terms of said statute, and by reason of the resulting ignorance of said William Conard of the things in paragraph fifteenth hereinabove set forth, and of the fact that defendant is unable, under its by-laws, to pay said certificate of William Conard in full at its maximum face value, these plaintiffs have been damaged in the sum of three thousand dollars ($3,000) less the sum of eight hundred and sixty-six $13/100$ dollars ($866.13), to wit, in the sum of two thousand one hundred and thirty-three $87/100$ dollars ($2,133.87).

### FOR A THIRD CAUSE OF ACTION.

For a third cause of action, plaintiffs, further complaining of the defendant, repeating each and every the allegations hereinbefore contained, and making the same part of this third cause of action, further allege, on information and belief, as follows:

Twentieth. That in or about the month of January, in the year 1890, defendant, through heavy mortalities of its members and certificate holders, and through business misfortunes, became so financially involved, and thereafter at all times hereinafter mentioned so remained, that it then became, and at all times hereinafter mentioned remained, and now is, unable to pay its certificates issued prior to the 1st day of October, 1892, in full, at their maximum face value, under by-laws then or at any time since or now in force, and that since the 1st day of January, 1890, defendant has compromised at sums far below their face value death claims on all certificates issued prior to October 1, 1892, of which there have been a very large number, and that since the month of January, 1890, certificates issued by defendant, including that issued to said William Conard, have never at any time been worth their full face value.

Twenty-First. That by reason of the foregoing facts, and later by reason of section 210 of chapter 690, page 2014, of the Laws of 1892, it became in January, 1890, and thereafter continued to be, the duty of the defendant to apprise said William Conard that said company was not able to and as a matter of fact was not paying its certificates in full at their maximum face value, and that his said certificate was not worth its maximum face value.

Twenty-Second. That for the purpose of deceiving said William Conard, and fraudulently leading him to believe that defendant company was in sound financial condition, and was actually able to and in the practice of paying its certificates in full at their maximum face value, and that said certificates, including the one herein sued on, were worth their maximum face value, and of inducing him to continue his membership in defendant association, and to continue paying into the company all assessments or periodical calls as the same should from time to time thereafter be made and levied, defendant wrongfully, unlawfully, and fraudulently concealed and suppressed from said William Conard the fact that it was not able to and as a matter of fact was not paying said certificates in full at their maximum face value, and that the same, including his own, were not worth their maximum face value.

Twenty-Third. That for like purposes defendant caused its officers, agents, attorneys in fact, and servants from time to time to issue to the public and to said William Conard, and said officers, agents, attorneys in fact, and servants did from time to time issue to the public and said William Conard, fraudulent, false, and misleading representations, printed both on its notices of assessment and of periodical calls and otherwise, designed to induce said William Conard to believe that defendant association was in a flourishing financial condition, and that defendant was at all said times capable of and actually in the habit and practice of paying its certificates in full at their maximum face value, and that certificates issued by said company, including that issued to said William Conard, were worth their maximum face value.

For a bill of particulars of said representations, plaintiffs allege and expect to prove on the trial of this action representations as follows:

On October 10, 1892, defendant caused to be issued to its members and to said William Conard a circular letter concerning its business, signed by E. O. Beers, its then secretary, in which letter the following words appear:

"We have the pleasure and satisfaction of informing you that all claims that are reported to October 1st are provided for and will soon be settled."

In the year 1892, defendant caused to be issued to its members and to said William Conard a printed circular, in its own name and concerning its business, in which circular the following words referring to itself and its business appear:

"It provides the most absolute and stable indemnity at the lowest possible cost consistent with the greatest security.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Our association can point with pride to its benevolent work and 'fulfilled promises' in the past, and on this record we can conscientiously recommend and urge our brethren of the masonic fraternity to join us and share in the benefits offered.

"There are hundreds of people to-day throughout the country and especially in New York State, who bless the name of the Southern Tier Masonic Relief Association for assistance rendered them in the time of deepest trouble and

the darkest hour of their lives when the breadwinner was cut down and the light in the loving home was darkened.

"Claims promptly adjusted and paid without litigation.

"Its business is conducted under the supervision of the insurance department of the State of New York.

"It is plain practical insurance at cost."

On October 10, 1893, defendant caused to be issued to its members and to said William Conard a notice of assessment No. 136, signed by E. O. Beers, its secretary, on the back of which it caused to be printed these words:

"Will you not assist us in securing new members of the Southern Tier Masonic Relief Association? The General Agent and his sub-agents are hard at work with results most gratifying. However, you can assist in the good work. Remember that an increase in membership means a reduction in the amount of your assessments."

On the 10th day of November, 1893, defendant caused to be issued to its members and to said William Conard a notice of assessment No. 137, signed by E. O. Beers, its secretary, on the back of which it caused to be printed the same words as immediately above quoted.

On the 9th day of December, 1893, defendant caused to be issued to its members and to said William Conard a notice of assessment No. 138, signed by E. O. Beers, its secretary, on the back of which it caused to be printed the words immediately hereinabove quoted.

On the 10th day of September, 1894, defendant caused to be issued to its members and to said William Conard a notice of assessment No. 147, signed by E. O. Beers, its secretary, on the face of which it caused the following words to be printed:

"During the month of August, not a death was reported and in fact up to the time of this assessment going to press none have been received. We congratulate the membership upon this showing and suggest that in view of this fact you might be able to secure some new members for us. The money realized from this assessment will be reserved for future claims."

In the year 1895 defendant caused to be issued to its members and to said William Conard a printed circular in its own name, concerning itself and its business, in which the following words appear, referring to itself and its business:

"It provides the most absolute and stable indemnity at the lowest possible cost consistent with the greatest security.

"At the beginning of the present year not a single death claim unpaid and not a dollar of indebtedness of any character. * * * [Words about the "breadwinner" and the "dark hour," etc., identical with those hereinabove set forth on those subjects, also here appear.]

"Claims promptly adjusted and paid without litigation.

"The Association closed last year without a dollar of indebtedness. Even though you are not a Mason the Association has kindly offered you the same benefits enjoyed by them.

"Does not the Southern Tier Masonic Relief Association offer you advantages over any and all others known to you? These and others are questions you should ask yourself.

"All questions cheerfully answered. Information given and blanks furnished on application to Secretary or General Agent.

"It furnishes insurance at the exact cost upon the actual mortality instead of upon assumed death rate."

On February 9, 1895, defendant caused to be issued to its members and to said William Conard, notice of assessment No. 152, signed by E. O. Beers, its secretary, on the back of which it caused to be printed the following words:

"One member wrote that the literature was very attractive but he was afraid he could not get many applications because there were so many other associations. He did not stop to think that it is so in every other line of business; but that our association, with our low assessment rate, our promptness in paying claims under our low ratio of expenses is the best of them all.
*    *    *    *    *    *    *    *    *    *    *    *

"But do you take pains to let your friends know what a grand institution we have?"

On the 9th day of March, 1895, defendant caused to be issued to its members and to said William Conard notice of assessment No. 153, signed by E. O. Beers, its secretary, on the back of which it caused to be printed these words:

"The Association feels proud of the fact that it has been granted a license to do business in the State of Pennsylvania. When a State feels that it cannot get along without us, there is every reason why we should feel gratified. *   *   *"

Likewise on the back of said notice referring to the payment in full of a death claim accrued since the enactment of chapter 610 of the Laws of 1892, requiring co-operative or assessment insurance companies to pay in full certificates issued after the 1st day of October, defendant caused these words to be printed, without, however, stating that the certificate was issued subsequent to the enactment of said requirement:

"I am in receipt of draft No. 40,482, on the Importers and Traders' National Bank of New York, for $2000, being payment in full of Policy No. 416, for $2000 on the life of my late father Rufus A. Packard. Permit me to thank you for your kindness and promptness in paying this claim. I understand that under your by-laws the claim is not due until April 24th, 1895.
"Very truly yours,        William G. Packard."

On the 10th day of April, 1895, defendant caused to be issued to its members and to said William Conard notice of assessment No. 154, signed by E. O. Beers, its secretary, on the back of which defendant caused to be printed these words:

"He wrote a letter congratulating the officers on the success of the association," etc.

On the back of said notice defendant likewise caused to be printed the following words, referring to the payment in full of claims on two certificates issued subsequent to the enactment of the insurance law in 1892, to wit:

"On April 2nd the Association paid the heirs of L. C. Foster Two thousand dollars, and April 4th the heirs of David E. Bedell Two thousand dollars. These claims were not due until May 27th and June 5th respectively. The fact that the Association is able to pay its claims two months before due is a good thing to tell your friends."

On the 10th day of June, 1895, defendant caused to be issued to its members and said William Conard, signed by E. O. Beers, its secretary, notice of assessment No. 156, on the back of which it caused to be printed these words:

"Our assessments are low and we pay our claims long before they are due. These are good things to tell your friends."

On the 9th day of November, 1895, defendant caused to be issued to its members and to said William Conard, signed by E. O. Beers, its secretary, notice of assessment No. 161, on the back of which it caused to be printed letters from the beneficiaries of the certificates issued to Peter Carl and to Edward Mack for $2,000 and $1,000, respectively, which letters thank the company for payments in full of said sums, and which notice failed to state —what was the fact—that these certificates were issued subsequent to the enactment of the insurance law of the state of New York.

On the 10th day of February, 1896, defendant caused to be issued to its members and to said William Conard, signed by E. O. Beers, its secretary, notice of assessment No. 164, on the back of which it caused to be printed these words:

"Provides insurance at actual cost.
*       *       *       *       *       *       *       *       *       *       *       *
"Claims promptly adjusted and paid without litigation.
*       *       *       *       *       *       *       *       *       *       *       *
"Its books are open to inspection and examination and members are invited to examine and investigate for themselves."

On the 10th day of April, 1897, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, notice of assessment No. 178, on the back of which it caused to be printed these words, referring to itself:

"It is conceded by those who have given it an unprejudiced examination to be the true plan of protection and thoroughly adapted to the circumstances of the people. It combines all the advantages and avoids all the defects and inconveniences of the level premium and co-operative systems, between which it occupies a middle ground. It furnishes insurance at the exact cost upon the actual mortality instead of upon assumed death rate."

On the 10th day of May, 1897, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, notice of assessment No. 179, on the back of which it caused to be printed these words, referring to itself:

"For instance this Association is one of the very few that has not, during the past year or two, called on its members for extra premiums."

On the 10th day of July, 1897, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, notice of assessment No. 181, on the back of which it caused to be printed these words:

"The payment of a policy in the Southern Tier Masonic Relief Association of Elmira, N. Y., is as sure as the redemption of a Government bond."

In the month of January, 1898, defendant caused to be issued to its members and to said William Conard a printed report of the business of the defendant for the year 1897, in which it caused to be printed the report of J. Monroe Shoemaker, its then president, from which the following words are quoted:

"We claim that the association has a record for fair dealing, which should be a sure guarantee that its claims will be paid without hesitation. This is far better than to run after strange gods in the insurance world, which are often only a delusion and a snare."

On the 10th day of September, 1898, in connection with a call for an extra premium, No. 195A, defendant caused to be issued to its members and to said William Conard a printed card on which the following words appear:

"To conform with the Insurance Laws of the State of New York requiring that a reserve premium be kept on hand by all associations doing business under authority of them, an extra premium (195A) is issued in connection with premium 195, dated September 10th."

On the 10th day of May, 1902, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, a notice of a double assessment Nos. 239 and 239A, on the face of which it caused to be printed these words:

"An extra premium—239A—is issued in connection with this premium. It is necessitated by the excessively heavy death rate of the winter months."

On the 10th day of November, 1902, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, notice of double assessment Nos. 245 and 245A, on the face of which it caused to be printed these words:

"This is a double premium. It is necessitated by a excessively heavy death rate."

On the 10th day of July, 1903, defendant caused to be issued to its members and to said William Conard, signed by J. Maxwell Beers, its secretary, notice of double assessment Nos. 253 and 253A, on the face of which it caused to be printed these words:

"This is a double premium. It is necessitated by a heavy death rate."

On each and every monthly notice of assessment issued by defendant since January, 1890, to wit, every month, defendant caused to be printed opposite the names of members who had died since the last notice a column of figures headed with the words "Benefit Certificate," under which, and opposite the said names, defendant caused to be inserted the full maximum face value of the certificate, so as to induce the belief that the defendant was paying the full maximum face value thereof.

Twenty-Fourth. That each and every the aforesaid printed statements, in so far as they tended to induce the belief that defendant was in a flourishing financial condition, and that defendant was at all said times capable of, and actually in the habit and practice of, paying its certificates in full at their maximum face value, and that certificates issued by defendant were worth their maximum face value, and the impressions that all of the foregoing words were intended to and did convey were false and untrue in fact, and deliberately misleading, and so known to be to the defendant and its officers, agents, attorneys in fact, and servants, and in particular so known to E. O. Beers and to J. Maxwell Beers.

Twenty-Fifth. That said William Conard at all times, to the day of his death, believed that said statements, each and every one, were true in every respect, and was deceived thereby and interpreted them to mean, and all his life believed, that defendant was paying all claims on its death certificates whensoever issued, in full, at their maximum face value, and that all certificates issued by said company, including his own, were worth their maximum face value, and, so believing, relied on said statements and to the day of his death remained a member of defendant association in good standing, and paid all assessments as and when called upon by defendant, of which there were a large number, as more fully appears in paragraph eighteenth hereinabove.

Twenty-Sixth. That at no time since the 1st day of January, 1890, has the certificate aforesaid issued to William Conard been worth its maximum face value, and is not now, and that all the money that is in the treasury of defendant that is applicable to the payment thereof is eight hundred and sixty-six $13/100$ dollars ($866.13), and that said certificate is only worth the sum of eight hundred and sixty-six $13/100$ dollars ($866.13), and that had said representations been true, said certificate would have been worth the sum of three thousand dollars ($3,000) to these plaintiffs.

Twenty-Seventh. That, by reason of the foregoing wrongful and fraudulent concealments and misrepresentations, these plaintiffs have been damaged in the sum of two thousand one hundred and thirty-three $87/100$ dollars ($2,133.87).

Wherefore plaintiffs demand judgment against the defendant as follows: On the first cause of action, for the sum of eight hundred and sixty-six $13/100$ dollars ($866.13), with interest from the 23d day of November, 1903, and on the second and third causes of action for the sum of two thousand one hundred and thirty-three $87/100$ dollars ($2,133.87)—in all, for the sum of three thousand dollars ($3,000), with interest from the 23d day of November, 1903—together with their costs and disbursements in this action.

## The following is the opinion of the lower court, per Sewell, J.:

The issues of law raised by the demurrer of the defendant, Southern Tier Masonic Relief Association, to the complaint herein, coming on to be heard by the court at a Special Term commencing September 19, 1904, at Cortland, N. Y., held by the undersigned, and after hearing Frederick Collin, Esq., of counsel for the defendant, in support of the demurrer, and Yorke Allen, Esq.; of counsel for plaintiffs in opposition, and due deliberation being had thereon, I decide and find as follows:

(1) It appears, upon the face of the complaint that causes of action have been improperly united herein upon the grounds that the alleged second and

third causes of action set forth in said complaint do not affect or exist in favor of the plaintiffs. The plaintiffs have no interest in or rights under the said alleged second and third causes of action, and also that a cause of action upon the certificate of membership of William Conard, the by-laws, etc., of the defendant, and causes of action in tort and for wrongful and illegal acts, are joined.

(2) That defendant is entitled to an interlocutory judgment which shall adjudge that the demurrer is sustained, with costs to be adjusted by the clerk and included in said interlocutory judgment, and shall direct that in case the plaintiffs do not within twenty days after service of a copy of such interlocutory judgment on their attorneys, with notice of its entry, file and serve an amended complaint, and pay said costs to defendant or defendant's attorneys, then defendant may enter final judgment against the plaintiffs, sustaining the demurrer and dismissing the complaint, with costs.

(3) I hereby direct judgment to be entered as aforesaid.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Allen & Sabine, for appellants.
Reynolds, Stanchfield & Collin, for appellee.

PER CURIAM. For the reasons stated in the decision at special term, and because of the misjoinder of parties plaintiff (Nagel v. Lutz, 41 App. Div. 193, 58 N. Y. Supp. 816), judgment affirmed, with costs, and leave is granted to sever the action, pursuant to section 497 of the Code of Civil Procedure, on payment of the costs as stated in the interlocutory judgment and of this appeal. All concur, except HOUGHTON, J., who dissents as to misjoinder of plaintiffs, and concurs in sustaining demurrer as to third cause of action only.